UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT COLYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:22-cv-00193-AGF |
| | ) | |
| LEADEC CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Robert Colyer's motion (ECF No. 92) to disqualify attorneys Heidi Durr and Rodney Harrison,[1] and their law firm, Ogletree Deakins PC ("Ogletree"), from representing Defendant Leadec Corp. ("Leadec") in this case.  The motion to disqualify arises from these attorneys' involvement in retaining an outside investigator on behalf of Leadec to investigate employee complaints against Colyer, which ultimately led to Colyer's termination and the basis of the instant employment discrimination lawsuit.  Colyer argues that the attorneys' involvement in the retention of the investigator, and in the investigation itself, makes them necessary witnesses in this case, in violation of the Missouri Rules of Professional Conduct.

Leadec opposes the motion and has separately moved for a protective order or to quash Colyer's notice of deposition seeking to depose Durr.[2]  For the reasons set forth

---

[1] Harrison has not entered an appearance in this case, but Colyer argues that Harrison is employed by Ogletree and may enter his appearance at any time.

[2] Colyer has already deposed Harrison.

below, the Court will grant Leadec's motion for a protective order and will deny Colyer's motion for disqualification.

## BACKGROUND

Colyer's claims arise out of Leadec's decision to terminate his employment in May 2019. Colyer, who is black, alleges that he was an elected union representative at the manufacturing facility where he worked and that, in such capacity, he escalated employee grievances regarding racial discrimination at Leadec, including Leadec's termination of black managers in favor of white managers. Colyer alleges that one such black manager, DeAngelo Presberry, was terminated due to Leadec's racially disparate application of its harassment policies. Leadec terminated Presberry in January of 2019.

Leadec alleges that in April of 2019, following Presberry's termination, it received written and verbal complaints from three of Presberry's accusers alleging that Colyer and another black union representative, Nicholas Jackson, had intimidated or harassed them regarding their accusations against Presberry. Leadec then hired an outside investigator and human resources consultant, Ann Plunkett, to investigate these complaints. Leadec terminated Colyer based on Plunkett's investigation. The decision to terminate Colyer was made by Leadec's human resources official, Cheryl Hertfelder. According to Colyer, Plunkett's investigation was a sham and pretext for race discrimination and also retaliation for Colyer filing race-related union grievances.

Leadec hired Ogletree in April of 2019. Around that time, Leadec asked Ogletree attorney Harrison to recommend an outside investigator to investigate the employee complaints against Colyer and Jackson. Harrison and/or Durr recommended Plunkett

2

and thereafter introduced Plunkett to Leadec.   Following this introduction, Plunkett sent an engagement letter to Leadec, which Leadec accepted, and Plunkett began her investigation on April 25, 2019.

Plunkett interviewed the three complainants and a few other employees. There is no evidence that any Ogletree attorney participated in these interviews.   Plunkett planned to interview Colyer and Jackson but, given the contentious relationship between the union and Leadec at that time, Leadec was concerned that the union would not make Colyer or Jackson available for these interviews.   Leadec and/or Plunkett contacted Harrison regarding this concern.

On April 25, 2019, Harrison emailed Leadec with this guidance:

> Just talk to Anne [sic].  At this point she needs to interview Colyer and Jackson.  If the union says no then she can indicate in her report that she attempted to talk to them and was not allowed to buy [sic] the union and therefore does not have the benefit of their responses for her conclusion. Unless someone disagrees, I think in [sic] should come out tomorrow to do these interviews.  It needs to be explained to them that they're being investigated for misconduct and that they have the right to a union representative.   Let me know if you want to set up a call to discuss.

ECF No. 93-9.   Harrison sent other emails in the days that followed advising that Plunkett complete her investigation quickly and that Plunkett send Harrison a summary of her meetings.

Harrison testified by deposition in this case as to his involvement in Plunkett's investigation.   He testified that his recollection is that he was uninvolved in Plunkett's job but that Plunkett needed to interview "two people" (referring to Colyer and Jackson), that the "union [was] throwing up a roadblock to that happening," and that it was "not

3

[Plunkett's] job to unblock that." ECF No. 102-9, Harrison dep. 68:8-15. Harrison testified that Plunkett had reached out to him stating that a union representative was trying to prevent or impede her interviews of Colyer and Jackson, and Harrison was trying to resolve that issue in order to allow Plunkett to complete her interviews of Colyer and Jackson with proper union representation. *Id.* at 68-69.

Plunkett ultimately interviewed Colyer and Jackson on May 10, 2019, with union representation present. There is no evidence that any Ogletree attorney participated in these interviews. Plunkett sent her report to Leadec's in-house counsel on May 15, 2019. There is no evidence that Plunkett sent her report to any Ogletree attorney or that any Ogletree attorney received Plunkett's report before Colyer's termination. Leadec terminated Colyer the same day it received Plunkett's report, on May 15, 2019, and based the termination on Plunkett's conclusions. Colyer filed his administrative charges of discrimination in September of 2019, and filed the instant lawsuit in January of 2022.

Durr and two other Ogletree lawyers (not Harrison) have represented Leadec since the outset of the case. Following an extended discovery period in this case, Colyer deposed Plunkett, Hertfelder, Leadec's in-house counsel Angela Olson, and Harrison regarding, among other issues, Ogletree's involvement in Plunkett's retention and investigation.

Plunkett and Harrison both testified in depositions in this case that no one at Ogletree directed Plunkett on how she was to do her investigation or what her findings should be. ECF No. 102-6, Plunkett dep. 69, 100-101, 159; ECF No. 102-9, Harrison dep.

4

30-33, 63-68. As to Durr's involvement in Plunkett's investigation, Colyer alleges the following:

> Mr. Harrison testified that Ms. Plunkett's emails show there were meetings that appear to have taken place with Ms. Durr and Ms. Plunkett. Mr. Harrison didn't remember if he was present for them. Mr. Harrison was unsure because he has "clients who don't like to pay for two lawyers to be on a call at the same time[.]"

ECF No. 93 at 15.

Colyer also points to an email from Plunkett to Harrison on October 29, 2021, stating that Plunkett wanted to check on the status of this matter to see whether she would be expected to call to testify in court. ECF No. 93-12. Harrison responded to that email and copied Durr, stating that Durr was the one "handling these matters." *Id.* And Durr responded to Plunkett in February of 2022 stating that Colyer had filed the instant lawsuit and that she was not sure whether Plunkett would be needed as a witness. *Id.*

## DISCUSSION

**Motion for a Protective Order**

Upon careful consideration of the parties' arguments, the Federal Rules of Civil Procedure, and this Court's Local Rules, the Court will grant Leadec's motion for a protective order as to Colyer's notice to depose Durr.[3] The Court has previously recounted the contentious history of discovery in this case, *see, e.g.*, ECF No. 99, and will not repeat that history here. Suffice it to say that discovery in this case was initially set

---

[3] As Leadec correctly notes, Durr is not a party to this case, and Colyer does not appear to have served a subpoena on Durr, which would be required to depose a non-party witness. *See, e.g.*, *Synergetics, Inc. v. Hurst*, No. 4:04CV318 CDP, 2007 WL 2422871, *3 (E.D. Mo. Aug. 21, 2007); Fed. R. Civ. P. 30(a)(1).

5

to close on May 5, 2023, but the Court extended the discovery period for a short time to allow Colyer to conduct certain supplemental written discovery narrowly tailored to the needs of the case and to conduct only those additional depositions necessary in light of the supplemental discovery provided. *See* ECF No. 75.

The period for supplemental discovery has now closed, and Colyer has not demonstrated that a deposition of Durr is necessary or proportional to the needs of the case. As noted above, Colyer has already deposed the relevant witnesses who might have knowledge of Plunkett's investigation, including Plunkett, Hertfelder, Olson, and Harrison, and each of these witnesses testified about Ogletree's and Durr's involvement (or lack thereof) in Plunkett's investigation. Colyer has not shown that a deposition of Durr would reveal any new information. Rather, a deposition of Durr at this stage would be unreasonably cumulative and duplicative. The Court will therefore grant Leadec's motion for a protective order.

**Motion for Disqualification**

"The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the district court." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (citation omitted). But "[b]ecause of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny." *Awnings v. Fullerton*, 912 F.3d 1089, 1095 (8th Cir. 2019) (citation omitted).

The party moving for disqualification bears the burden of showing that continuing representation would be impermissible. *See A.J. by L.B. v. Kierst,* 56 F.3d 849, 859 (8th Cir. 1995). "A party's right to select its own counsel is an important public right and a

6

vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (citation omitted).

This Court has adopted the Missouri Supreme Court's Rules of Professional Conduct. *See* E.D. Mo. L.R. 12.02. At issue here is Rule 4-3.7 of the Missouri Supreme Court Rules of Professional Conduct, which provides that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 4-1.7 or Rule 4-1.9 [governing conflicts of interests with respect to current and former clients, respectively].

Mo. S.Ct. R. 4–3.7.

This Rule "has been interpreted to mean an attorney is a necessary witness only if there are things to which he will be the only one available to testify." *Macheca Transp.*, 463 F.3d at 833. "Testimony may be relevant and even highly useful, but still not strictly necessary." *Id.*

As an initial matter, it is not at all clear that Rule 4–3.7 applies at the pretrial stage. "In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent

7

a client in the pretrial stage." *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007). By its own terms, Rule 4–3.7 only applies to attorneys acting as advocates "at a trial." *See id.*; Mo. S.Ct. R. 4–3.7. Further "[o]ne purpose of the necessary witness rule is to avoid the possible confusion which might result from the jury observing a lawyer act in dual capacities—as witness and advocate," and such purpose is not implicated at the pretrial stage where the jury is not typically involved. *Droste*, 477 F.3d at 1035–36.

But even if the rule applied at the pretrial stage, it would not result in disqualification here. Harrison is not an attorney of record in this case, and the Court is not inclined to issue an advisory ruling as to whether Harrison would be disqualified in the future if he were to later enter an appearance.[4]

Although Durr is an attorney of record, Colyer has not shown that she is a necessary witness. There is simply no evidence that Durr had any substantive involvement in Plunkett's investigation beyond perhaps the initial introduction of Plunkett to Leadec. Colyer's allegation that Durr or any other Ogletree lawyer attempted to influence Plunkett's investigation is pure speculation. Regardless, Durr would not be the only witness to testify as to such alleged facts, as Plunkett or Leadec

---

[4] In any event, Colyer has not demonstrated that Harrison is likely to be a necessary witness at trial. As discussed below with respect to Durr, there is simply no evidence that Harrison had any substantive involvement in Plunkett's investigation, or that he influenced or attempted to influence the outcome such investigation. Moreover, Harrison is not the only witness available to testify as to his alleged involvement in Plunkett's investigation. Plunkett herself can testify regarding these issues and has done so already by deposition in this case. Finally, even if Harrison were a necessary witness (which he is not), Colyer has not alleged, let alone demonstrated, that Rules 4-1.7 or 4-1.9 apply here or would preclude another Ogletree lawyer from representing Leadec at trial.

8

management could (and have by deposition) testified regarding Ogletree attorneys' involvement in Plunkett's investigation and have denied any directive from or attempted influence by Ogletree attorneys. The best witnesses to testify regarding whether Plunkett's investigation was a sham, as Colyer alleges, are Plunkett, Colyer, and the Leadec employees involved in the investigation and in Leadec's decision to terminate Colyer. *Cf. E.E.O.C. v. Bardon, Inc.*, No. RWT 08CV1883, 2010 WL 323067, at *1-3 (D. Md. Jan. 19, 2010) (disqualifying an attorney who actually conducted his client's internal investigation of an employee and made the decision to terminate that employee, before defending the client in the employee's discrimination lawsuit). Disqualification of Durr or Ogletree is not warranted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to quash and/or for a protective order concerning the deposition notice of non-party witness Heidi Durr is **GRANTED**. ECF No. 81.

**IT IS FURTHER ORDERED** that Plaintiff's motion to disqualify counsel is **DENIED**. ECF No. 92.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2023.